CASTELLÓ ET AL., DEMANDANTES Y APELANTES, *v.* PÉREZ ET AL., DEMANDADOS Y APELADOS.

## Apelación procedente de la Corte de Distrito de Mayagüez en causa sobre nulidad.

No. 1387.—Resuelto en abril 28, 1916.

MANDATARIOS—CAPACIDAD PARA COMPRAR—ABOGADOS—BIENES ADQUIRIDOS POR UN ABOGADO PARA SU PRINCIPAL—SUBASTA PÚBLICA.—Apareciendo de las pruebas admitidas en este caso sin oposición alguna por parte de los demandantes que el demandado Pettingill aunque aparentemente compró la finca litigiosa para sí, de hecho lo hizo para sus principales A. Ruffer & Sons y en beneficio de éstos, quienes ratificaron con sus actos la compra de la finca que él les comunicó haber hecho en su nombre, no es de aplicación el artículo 1362 del Código Civil en el párrafo último de su No. 5º. que prohibe a los abogados adquirir para sí o por persona alguna intermedia aunque sea en subasta pública o judicial bienes o derechos que fueren objeto de litigio en que intervengan por su profesión u oficio.

COMPRAVENTA—ADQUISICIÓN DE QUIEN EN EL REGISTRO APARECE CON DERECHO PARA VENDER—TERCEROS.—Cuando el comprador adquiere de quien en el registro aparece con derecho para vender, no puede invalidarse en cuanto a él la compra hecha por su vendedor, inscrita en el registro, por ser un tercero que no intervino en el acto o contrato inscrito según el artículo 34 de la Ley Hipotecaria.

ID.—ABOGADO—CONSTANCIAS DEL REGISTRO—PRESUNCIÓN.—Del hecho de que del registro resulte que el demandado Pettingill fué abogado de sus principales en otro caso contra otras personas, no puede deducirse que lo fuera también de sus dichos principales en el procedimiento en que adquirió la finca trasmitada después al demandado Pérez Sales.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sr. José Sabater y Francisco Soto Gras.*

Abogados de los apelados: *Sres. José de Diego, Benjamin J. Horton* y *Angel Arroyo Rivera.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

El presente es un recurso de apelación contra sentencia que en 19 de abril del año 1915 pronunció la Corte de Distrito de Mayagüez declarando sin lugar la demanda con las costas, gastos, desembolsos y honorarios de abogado a cargo de los demandantes.

En la demanda solicitan los demandantes los siguientes pronunciamientos:

1°. Que es nula la venta en pública subasta verificada en 4 de septiembre de 1909 por el árbitro especial (*special master*) Benjamín S. Cornwell, a favor del demandado N. B. K. Pettingill en el pleito seguido por A. Ruffer & Sons contra Agustín Castelló y Busquets y otros, ante la Corte de los Estados Unidos para Puerto Rico, de la finca denominada "Fe" que se describe en dicha demanda;

2°. Que en su consecuencia también es nula la escritura de dicha venta otorgada a favor del demandado N. B. K. Pettingill por el árbitro especial ante el notario Don Eugenio Géigel a 15 de septiembre de 1909, y nula igualmente la inscripción de esa escritura en el Registro de la Propiedad de Mayagüez;

3°. Que asimismo es nula la escritura de venta e hipoteca de la misma finca otorgada por el demandado N. B. K. Pettingill a favor del otro demandado Tomás Pérez Sales ante el notario Don Eugenio Géigel a 28 de febrero de 1910, y nula su inscripción en el registro;

4°. Que se condene en costas, gastos y honorarios de abogados a los demandados que se opusieren a la demanda.

Alegan los demandantes que Agustín Castelló, su causante, adquirió por virtud de la disolución de la mercantil que giró en la plaza de Mayagüez bajo la razón de Patxot, Castelló & Co., la hacienda denominada "Fe" que se describe en la demanda; que en un pleito seguido ante la Corte

Federal de Puerto Rico por A. Ruffer & Sons, de Londres, contra Agustín Castelló, como liquidador de la indicada firma, sobre cobro de una hipoteca que gravaba la referida hacienda "Fe," recayó sentencia en 9 de enero de 1904 por la que se ordenó que el demandado Castelló pagase a la demandante A. Ruffer & Sons o a su abogado de récord, la suma de $10,264.81, dentro del término de cinco meses a contar desde la fecha de la resolución, ordenando, además, que en caso de no efectuarse el pago fuera vendida en pública subasta la finca hipotecada; que de acuerdo con la sentencia el árbitro especial nombrado por la corte, o sea, Benjamin S. Cornwell, vendió en pública subasta la hacienda "Fe" en 4 de septiembre de 1909, adjudicándola al demandado N. B. K. Pettingill por la suma de $8,000; que el árbitro especial otorgó ante el notario Eugenio Géigel en 15 de septiembre de 1909 la correspondiente escritura de venta judicial a favor de Pettingill, quien la inscribió en el registro; que posteriormente el comprador Pettingill por escritura de 28 de febrero de 1910, otorgada ante el mismo notario Géigel e inscrita también en el registro, vendió por su propio derecho y además como apoderado de su esposa, la hacienda "Fe" al otro demandado Tomás Pérez Sales dejándola éste hipotecada a favor de su vendedor para garantizarle el pago de parte del precio aplazado; y que habiendo fallecido Agustín Castelló, los demandantes son sus únicos y universales herederos.

Alegaron también los demandantes como motivos de nulidad de la venta a favor de Pettingill y de la hecha por éste a favor de Pérez Sales que N. B. K. Pettingill fué el abogado de récord de A. Ruffer & Sons en el caso de éstos contra Agustín Castelló ante la Corte Federal, desde que se interpuso y radicó la demanda hasta el último trámite del otorgamiento de la escritura de venta judicial, y que al hacerse la venta a favor de Pérez Sales constaba explícitamente en el registro aquella circunstancia, o sea, que Pettingill era

el abogado de A. Ruffer & Sons en el juicio en que adquirió la finca.

En su contestación alega el demandado Pettingill que no adquirió en subasta la hacienda "Fe" para su propio beneficio sino por cuenta y para beneficio de A. Ruffer & Sons de quien era abogado, aun cuando así no se hiciera constar en el acta de la subasta, ni en la escritura otorgada a su favor por el *special master;* y tanto Pettingill como el otro demandado Pérez Sales negaron que en el registro hubiera constancia de que Pettingill fuera el abogado de A. Ruffer & Sons en el pleito para el cobro de la hipoteca, ignorando esa circunstancia Pérez Sales.

Celebrado el juicio recayó sentencia en los términos que al principio dejamos indicados, sometida a nuestra consideración a virtud de recurso contra ella interpuesto por la representación de la parte demandante.

Como base de dicha sentencia estableció la corte inferior en su opinión las siguientes conclusiones:

"*Primera.* Si bien es cierto que en la escritura otorgada por el *special master* Benjamin S. Cornwell a favor de N. B. K. Pettingill en 15 de septiembre de 1909 no se hizo constar que la venta se efectuaba a beneficio de A. Ruffer & Sons, la corte tiene el convencimiento de que realmente la venta no se realizó particularmente en favor de Pettingill sino por cuenta y a beneficio, y con instrucciones de sus clientes que recibieron el precio de la venta.

"*Segunda.* En el registro de la propiedad no constaba de una manera explícita, y cree la corte que de ninguna manera, al otorgarse por N. B. K. Pettingill a favor de Tomás Pérez Sales la venta de la finca cuestionada, que el primero fuese abogado de A. Ruffer & Sons en el pleito donde adquirió la misma finca en pública subasta."

En impugnación de las anteriores conclusiones, los apelantes alegan como motivos del recurso los que transcribimos a continuación:

1°. La corte inferior erró al declarar que aún cuando la escritura de venta otorgada por el *especial master* lo fué a favor de Pettingill, tiene el convencimiento de que en reali-

dad lo fué por cuenta y para beneficio de sus clientes A. Ruffer & Sons.

2º. La corte inferior erró al declarar que en el Registro de la Propiedad de Mayagüez no consta de una manera explícita que al hacerse la venta por Pettingill a Pérez Sales el primero fuera abogado de los ejecutantes en el pleito que produjo la venta en pública subasta.

Ambos errores pueden sintetizarse en uno, a saber: error en la apreciación de las pruebas relativas a haber obrado Pettingill por cuenta y para beneficio de sus clientes A. Ruffer & Sons al adquirir en pública subasta la hacienda "Fe," y al hecho de no constar en el registro de una manera explícita que al verificarse dicha venta fuera Pettingill abogado de A. Ruffer & Sons, en el pleito en que se verificó la subasta.

La evidencia aportada muestra por modo indudable que el demandado N. B. K. Pettingill era abogado de A. Ruffer & Sons en el caso seguido ante la Corte Federal por éstos contra Agustín Castelló como liquidador de Patxot, Castelló y Cía., y que siendo tal abogado de A. Ruffer & Sons, adquirió a nombre propio en subasta celebrada ante el árbitro especial de la Corte Federal, la finca hipotecada por precio de $8,000, los que satisfizo por medio de un recibo que dice así:

"Mayagüez, P. R., septiembre 4, 1909. A. Ruffer & Sons, los demandantes en el pleito contra Patxot, Castelló y Compañía en la ejecución de hipoteca sobre la hacienda 'Fe,' por la presente, por medio de su abogado de récord, acusan recibo de la suma de ocho mil dollars por la cual dicha finca se ha vendido en el día de hoy por Benjamin S. Cornwell, como *special master,* y por la presente estipula y conviene que dicha suma de ocho mil dollars sea acreditada como en pago hecho a cuenta de la suma a que fueron condenados a pagar los demandados a los demandantes en dicho pleito. N. B. K. Pettingill, abogado de récord de A. Ruffer & Sons."

Pero aunque Pettingill tanto en el acto de la subasta como en la escritura de venta otorgada a su favor aparezca actuando a nombre propio, se arriesgó a comprar para sus

clientes aceptando las consecuencias de que la finca quedara en definitiva para éstos o para él; y como A. Ruffer & Sons aceptaron la compra hecha por Pettingill, es claro que para los mismos y no para Pettingill quedó hecha la venta en definitiva.

Nuestra apreciación de los hechos se ajusta a la prueba documental aportada al juicio, en la cual figura la siguiente carta de A. Ruffer & Sons a Pettingill:

"Londres, octubre 6, 1909. Mr. N. B. K. Pettingill, San Juan. Muy Sr. mío: Confirmamos nuestra carta de 27 de agosto, de la cual le acompañamos copia y acusamos recibo de su carta de 17 de septiembre, en donde vemos que la subasta de la finca de café "Fe" tuvo lugar el día 4 últ. y que no habiendo postores dicha finca nos fué adjudicada, habiendo recibido usted la propiedad en su nombre. Le suplicamos que retenga este título en depósito a nombre nuestro y a nuestra completa disposición y en el ínterin sírvase seguir investigando por si se presenta algún comprador. Confiamos en que usted nos dará noticias de una venta satisfactoria oportunamente * * *. (Firmado) A. Ruffer & Sons."

La copia de la carta de 27 de agosto por A. Ruffer & Sons a Pettingill, dice así:

"Londres, agosto 27, 1909. Mr. N. B. K. Pettingill, San Juan, P. R. Muy señor mío: *Patxot Castelló.* Acusamos recibo de su apreciable del 10 de agosto y notamos su contenido; pero como no deseábamos hacer oferta por la finca en cuestión, telegrafiamos ayer a usted en lenguaje cifrado, lo siguiente:

" 'Su carta del 10 recibida; no hacemos oferta; venda en los mejores términos posibles.' * * * (Firmado A. Ruffer & Sons."

La carta anterior muestra que Pettingill no estaba autorizado por A. Ruffer & Sons para verificar por cuenta de ellos la compra de la estancia "Fe" y que por el contrario A. Ruffer & Sons no querían subastarla; pero la otra carta también transcrita, de 6 de octubre, 1909, revela que Pettingill dió conocimiento a sus clientes de que la finca les fué adjudicada por falta de postores y que ellos aceptaron la adjudicación.

Pettingill correspondió al encargo de venta de la finca que le hicieron A. Ruffer & Sons en la expresada carta de 6 de octubre, como así aparece de la copia de otra carta que en febrero 14, 1910, dirigió a A. Ruffer & Sons, y que en lo pertinente transcribimos a continuación:

"Febrero 14, 1910. Sres. Ruffer & Sons, 39 Lombard St., London, Eng. Señores: Me place poderles informar que he hecho un contrato de venta de la finca, pues ello me releva de responsabilidad, con la cual empecé a encontrar cierto malestar. El comprador es un español, Don Tomás Pérez Sales, y el precio es de $10,000, pagaderos $3,500 al contado, y el saldo en plazos anuales de $1,000, con interés al 4 por ciento. El precio total fué la mejor oferta que tuve y aunque en otra oferta se hacían plazos mayores, el dinero en metálico era únicamente $2,000 y el de este hombre $3,500. Me decidí a favor de éste porque creo que un pago mayor en metálico proporciona mayor garantía de que la finca no volverá otra vez a parar a sus manos.

"El pago en metálico ha sido depositado aquí en el banco, pero los títulos todavía no han sido completados. Si ustedes quieren que yo retenga la suma total de mis honorarios separándola de este pago en metálico daría yo por terminada mi gestión en el asunto, y ustedes podrían cobrar los plazos por conducto de los Sres. Moral & Co., o cualquier otro agente que ustedes quisieran elegir. Pero no insisto en esto por si es que ustedes no lo estiman razonable. El hecho de que el comprador va a continuar en la finca y trabajar él mismo, a mi juicio, proporciona una verdadera garantía de que los plazos serán satisfechos a su vencimiento  *  *  *.  Sinceramente suyo."

En carta posterior de 13 de mayo de 1910, Pettingill da cuenta a A. Ruffer & Sons de la cantidad que Pérez Sales pagó de contado por la finca y les remite el saldo a su favor Esa carta, en lo pertinente al caso, dice:

"Mayo 13, 1910. Sres. A. Ruffer & Sons, 39 Lombard St., London, England. Señores: Según les indiqué en mi carta de la semana anterior, por la presente les incluyo un giro contra el *Commercial Bank of Scotland,* por £435–0–13 que es el equivalente al cambio que hoy tenemos de la suma de $2,118.70 en moneda americana.

"He llegado a esta cantidad en la forma siguiente: Desde que la relación de cuentas fué enviada a ustedes a fines de febrero, he otorgado y entregado una escritura de la finca 'Fe' al comprador,

Tomás Pérez Sales, cuyo costo incluyendo sellos de rentas internas fué de $40, rebajando esta suma de $58.70, saldo debido a ustedes de las operaciones de la cosecha de café quedan $18.70. El pago en dinero hecho por Pérez Sales fué de $3,500 del cual su 60 por ciento asciende a la suma de $2,100, formando las dos cantidades el total de $2,118.70, indicado anteriormente, el que creo hallarán ustedes correcto.

"Siempre que haya algo de que pueda informarles así lo haré. Sinceramente suyo."

La correspondencia epistolar entre Pettingill y A. Ruffer & Sons convence de que si bien A. Ruffer & Sons en un principio estuvieron renuentes a subastar la finca, aceptaron para sí la compra hecha por Pettingill, al tener conocimiento de ella, y además encargaron a Pettingill procurara venderla, lo que realizó Pettingill vendiéndola a Pérez Sales, y girando a A. Ruffer & Sons el importe del precio satisfecho de contado.

Las pruebas han sido admitidas sin oposición alguna por parte de los demandantes, y éstos tienen que aceptar su resultado, demostrativo de que Pettingill, aunque aparentemente compró la finca litigiosa para sí, de hecho la compró para sus principales A. Ruffer & Sons, y en beneficio de éstos. La sociedad A. Ruffer & Sons aceptó la gestión de Pettingill en el negocio de la subasta de la hacienda "Fe," y se ha aprovechado de las ventajas de dicha gestión. Ha ratificado con sus actos la compra de la finca que Pettingill le comunicó haber hecho en su nombre, y nada importa que anteriormente manifestara a Pettingill su propósito de no querer intervenir en la subasta.

Siendo ello así, no es de aplicación al caso el artículo 1362 del Código Civil en el párrafo último de su número 5°. que prohibe a los abogados adquirir por sí o por persona alguna intermedia, aunque sea en subasta pública o judicial, bienes o derechos que fueren objeto de litigio en que intervenga por su profesión u oficio.

Por lo que toca al demandado Tomás Pérez Sales, la conclusión a que hemos llegado respecto de su codemandado

Pettingill tiene que favorecerle; pero aun en el supuesto de que Pettingill hubiera comprado la finca "Fe" para sí y no para sus clientes A. Ruffer & Sons, siempre resultaría que Pérez Sales adquirió de quien en el registro aparecía con derecho para vender y no podría invalidarse en cuanto al mismo la compra hecha por Pettingill, inscrita en el registro, por ser un tercero que no intervino en el acto o contrato inscrito. Artículo 34 de la Ley Hipotecaria.

Hemos examinado detenidamente las inscripciones de las dos escrituras cuya anulación se pretende y todas las de la finca "Fe" que figuran en las pruebas mediante certificaciones del registrador de la propiedad, y en ninguna de ellas encontramos constancia alguna de que Pettingill fuera abogado de A. Ruffer & Sons en el pleito de éstos contra Agustín Castelló y Busquets como liquidador de Patxot, Castelló y Co. En la escritura de 15 de septiembre de 1909, a favor de Pettingill, no aparece inserto el recibo de 4 de septiembre firmado por N. B. K. Pettingill como abogado de récord de A. Ruffer & Sons. Ciertamente que del registro resulta que Pettingill fué abogado de A. Ruffer & Sons en otro caso de estos señores contra Sebastián Cabrer, pero de ello no puede deducirse que Pettingill fuera abogado también de A. Ruffer & Sons en el procedimiento en que compró la finca.

Según el artículo 36 de la Ley Hipotecaria, las acciones rescisorias y resolutorias no se darán contra tercero que haya inscrito los títulos de sus respectivos derechos conforme a lo prevenido en dicha ley, y según el artículo 37 se exceptúan del anterior precepto, entre otras, las acciones recisorias y resolutorias que deban su origen a causas que consten explícitamente en el registro, siendo tercero, con arreglo al artículo 27, aquel que no haya intervenido en el acto o contrato inscrito.

Tomás Pérez Sales no intervino en la escritura de venta otorgada por el *special master* de la Corte Federal a favor de Pettingill, e inscribió en el registro el título de venta de la finca "Fe" otorgado a su favor; Pettingill aparecía en

el registro como dueño de dicha finca a virtud de título también inscrito; y en el registro no constaba clara y explícitamente ni de modo alguno que Pettingill fuese abogado de A. Ruffer & Sons en el pleito en que adquirió la finca trasmitida después a Pérez Sales.

Respecto de Pérez Sales tenemos que llegar a la conclusión de que aun en la hipótesis de que adoleciera de nulidad la escritura de venta a favor de Pettingill, dicha nulidad no afectaría al título posterior de Pérez Sales.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no tomó parte en la resolución de este caso.